UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

April H.,[1]

        Plaintiff,

v.

Carolyn W. Colvin,
Acting Commissioner of the Social Security
Administration,

        Defendant.

Case No.  23-cv-3350 (LMP/LIB)

**REPORT AND RECOMMENDATION**

      Plaintiff, April H. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. The matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). This Court has jurisdiction over the claims under 42 U.S.C. § 405(g).

      Pursuant to the Federal Supplemental Rules of Civil Procedure which govern actions seeking judicial review of a decision of the Commissioner of Social Security, the present action "is presented for decision by the parties' brief." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a brief along with supporting memorandum requesting that the present action be remanded to the Social Security Administration. [Docket Nos. 13, 14]. Defendant filed a brief asking this Court to affirm the underlying decision denying Plaintiff's request for benefits and to dismiss this action. [Docket No. 15].

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by her name only her first name and last initial are provided.

For the reasons discussed herein, the undersigned recommends that Plaintiff's request to remand this matter, [Docket No. 14], be **GRANTED**, and Defendant's request to affirm the underlying decision, [Docket No. 16], be **DENIED**.

## I. BACKGROUND

On October 21, 2021, Plaintiff filed a Title II application for a period of disability and disability benefits, as well as a Title XVI application for supplemental social security income. (Tr. 15, 202–203, 204-213).[2] In both of her applications, Plaintiff alleged that her disability began on March 12, 2020. (Tr. 15, 231, 279). The Commissioner initially denied Plaintiff's claims on January 18, 2022, and again, upon reconsideration, on April 21, 2022. (Tr. 15, 57, 76, 86–87). On April 28, 2022, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 10, 130–131).

Administrative Law Judge Mikel Lupisella (hereinafter "ALJ") conducted a telephonic hearing on September 8, 2022. (Tr. 15, 32–56). Plaintiff testified at the hearing, along with an independent vocational expert, Teresa McClain, ("IVE McClain"). (Tr. 15, 21). At the hearing, Plaintiff was represented by counsel. (Tr. 10, 27–86).

On October 5, 2022, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits, as well as, Plaintiff's request for supplemental social security income. (Tr. 15–26). The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 26).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–6, 197–199). Subsequently, on September 8, 2023, the Appeals Council denied Plaintiff's request for

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 12], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 73 exhibits. (See Administrative Record [Docket No. 12]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of those exhibits.

2

review. (Tr. 1–6). As a result, the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

On October 31, 2023, Plaintiff filed this action. (Compl. [Docket No. 1]). Thereafter, this matter was presented to the Court for review pursuant to the parties' briefs, [Docket Nos. 14, 16], and the Court took the matter under advisement on the written submissions.

## II.  STANDARDS OF REVIEW

### A.  Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings about the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security [through the ALJ] must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

B. **Appeals Council Review**

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1).

C. **Judicial Review**

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the Commissioner's decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence.

4

Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that they are disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform any of her prior, relevant work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

## III. DECISIONS UNDER REVIEW

Before beginning the five-step disability evaluation process in the present case, the ALJ first determined that Plaintiff met the insured status requirement of Social Security Act through September 30, 2022. (Tr. 18). This finding is not in dispute.

The ALJ then made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since March 12, 2020, the alleged onset date. (Tr. 18). The Court will refer to the time period between Plaintiff's alleged onset date and the date of the ALJ's decision as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairments: bipolar disorder; generalized anxiety disorder/panic disorder; substance use disorder; post-traumatic stress disorder (PTSD); and major depressive disorder." (Tr. 18). Plaintiff does not challenge the findings made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 12.04, 12.06, and 12.15. (Tr. 18–19). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with nonexertional limitations: the claimant is able to understand, carry out, and remember simple instructions; is limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e. no work on an assembly line); is limited to low stress work, which is defined as involving only simple, work-related decisions and routine work place changes; is limited to occasional interaction with co-workers and supervisors; is limited to no transactional interaction with the public, i.e., sales, negotiation, customer service, or resolution of disputes; the work itself should deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork required.

(Tr. 21). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"; however, the ALJ also concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the [record for the reasons explained in the ALJ's] decision." (Tr. 21–22). Plaintiff does not challenge this credibility determination by the ALJ but does challenge the RFC on the grounds that the ALJ failed to make RFC findings consistent with his analysis of medical evidence.[3]

Based on his RFC determination and relying on the testimony from the independent vocational expert, IVE McClain, the ALJ determined that Plaintiff was unable to perform past relevant work as a sandwich maker. (Tr. 24). However, after considering the testimony of IVE McClain along with the Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform representative occupations such as a laboratory equipment cleaner, for which 25,846 jobs exist nationally, a laundry worker, for which 4,510 jobs exist nationally, or router, which 31,384 jobs exist nationally. (Tr. 25). Although Plaintiff does not directly challenge the finding regarding available occupations to Plaintiff with the ALJ's RFC at step four nor the alternative finding at step five, she implicitly challenges these findings in as much as they are based on the ALJ's, which Plaintiff does directly challenge.

The ALJ thus concluded that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 25–26).

---

[3] "Social Security Ruling 16-3p eliminates the use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020). SSR 16-3p applies to the present case, "but it largely changes terminology rather than the substantive analysis to be applied," and in discussing said determination, Courts have continued to use the "credibility" terminology. Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020).

**IV. ANALYSIS**

Plaintiff asserts one overarching argument in her appeal of the ALJ's decision: that remand is required because the ALJ's analysis of the medical evidence indicated that he found the Plaintiff to be more limited than the consulting Agency psychologists, but the ALJ then settled on an RFC that was actually less limiting. (See Plf.'s Mem. [Docket No. 13] at 3). Specifically, Plaintiff argues that the ALJ's RFC determination is unsupported because it is inconsistent with the ALJ's finding that Plaintiff was "moderately limited in her ability to understand, remember, and apply information," but they then issued an RFC which did not include any considerations regarding such limitations. (Id. at 5 (citing Tr. 22)).

The Commissioner avers that he is entitled to relief, contending that for each of Plaintiff's unavailing arguments, (Def.'s Memo. [Docket No. 16]), the ALJ's opinion is supported by substantial evidence in the record as a whole. (Id.).

"[A] claimant's RFC is a medical question," and therefore, "an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017) (quoting Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008)). "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner [through the ALJ] based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Noerper v. Saul, 964 F.3d 738, 745 (8th Cir. 2020) (first alteration in original) (internal citations omitted); see Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

In making the RFC determination, the ALJ has a duty to sufficiently develop the record to permit meaningful review on appeal. See Noerper v. Saul, 964 F.3d 738, 747 (8th Cir. 2020). This duty to develop the record "arises from the simple fact that the disability determination process is

8

not an adversarial process," and thus, the duty to develop the record "exists alongside the claimant's burden to prove [her] case." Id. Moreover, the ALJ's duty exists even when a claimant is represented by counsel. Id. The Eighth Circuit Court of Appeals has "repeatedly recognized this duty," and it has "remanded for further development of the record not only where evidence of functional limitations is lacking, but also where the record presents conflicting medical opinions as to which the Commissioner fails to explain a choice." Id.

During Plaintiff's initial disability determination, consulting Agency psychologist Joy Piccolino, Psy.D., L.P., reviewed the record and opined that Plaintiff suffered from the following mental impairments: depression, anxiety, and trauma/stressor related disorders. (Tr. 62–63, 70–71). These impairments led Dr. Piccolino to conclude that Plaintiff had a mild limitation on understanding, remembering, or applying information. (Tr. 61, 70). In addition, Dr. Piccolino further stated that Plaintiff had a moderate limitation when it came to interacting with others, concentrating or maintaining pace, and adapting or managing oneself. (Tr. 61, 70). Dr. Piccolino explained that Plaintiff had the mental capacity to understand, remember, and carry out routine, repetitive 1-3 step tasks but would be "markedly limited for detailed or complex/technical tasks." (Tr. 64–65, 73–74).

In addition, consulting Agency psychologist David Biscardi, Ph.D., concurred with Dr. Piccolino's opinion and adopted the same findings in terms of severity and Plaintiff's retained capacity for work. (Tr. 79–84, 91–95). For instance, Dr. Biscardi found that Plaintiff had a mild limitation on understanding, remembering, or applying information and a moderate limitation when it came to interacting with others, concentrating or maintaining place, and adapting or managing oneself. (Tr. 80, 91).

The ALJ found the medical opinions of the Agency psychological consultants to be "generally persuasive." (Tr. 22). The ALJ also stated that the Agency psychological consultants

9

were "consistent with the record as a whole." (Tr. 22). "However, based on additional records submitted after the consultants' review, and in further considering the combination of the [Plaintiff's] impairments," the ALJ found that Plaintiff was actually more limited in that she was able to perform only work with "no transactional interaction with the public, no tandem tasks or teamwork required, and that the work should deal with things rather than people." (Tr. 22). In addition, rather than a "mild" limitation, the ALJ found "a moderate limitation in understanding, remembering, and applying information to be supported[.]" (Tr. 22). This is because the ALJ noted that "some mental status exam findings . . . show[ed] deficits in these areas." (Tr. 22). From this discussion, it is apparent that the ALJ found a greater restriction than Dr. Piccolino and Dr. Biscardi had proposed. Consequently, it is this 'moderate limitation' determination that now underpins Plaintiff's argument as to why remand is appropriate in this case.

Plaintiff contends that when the ALJ crafted Plaintiff's RFC, the ALJ failed to incorporate the aforementioned "moderate limitation" concerning understanding, remembering, and applying information. Instead, the ALJ provided only—in relevant part—that Plaintiff has "the residual functional capacity to perform a full range of work at all exertional but with [the] nonexertional limitations[ of being] able to understand carry out, and remember simple instructions . . . ." (Tr. 21).

As a result, the narrow question for this Court's review is whether the RFC is commensurate with the ALJ's finding of a "moderate limitation" in the areas of understanding, remembering, and applying information. Should the Court find that the RFC is not commensurate with the ALJ's findings, then the Court must determine if the ALJ adequately explained his reasoning as to the discrepancy.

As for the first question, regarding whether the RFC incorporates the ALJ's "moderate limitation" finding, Defendant argues that the "moderate" limit was not intended to be language

10

incorporated into the RFC, but instead, was intended to relate to the psychiatric review techniques ("PRTs") at steps two and three, also known as the paragraph B criteria. (Def.'s Memo. [Docket No. 16] at p. 5–6). Before considering work capacity, step 3 addresses whether Plaintiff has met a specific criterion for a presumptively disabling impairment. KKC ex. Rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016). Defendant highlights that the ALJ discussed why he believed Plaintiff was moderately impaired in detail in step 3, (Tr. 19), as well as in his discussion of the opinions of Agency consulting psychologists Dr. Piccolino and Dr. Biscardi. (Tr. 22). As a result, Defendant argues that the "moderate" limit in the ALJ's discussion of Agency psychologists was merely a reference to his prior determination in step 3. (Def.'s Memo. [Docket No. 16] at p. 5–6). As such, Defendant avers that it is clear that the 'moderate' limitation referenced was not intended to be used as a component in the RFC. (Id. at p. 6). However, the Court cannot agree that the distinction is so clear.

First, Social Security Rule 96-8p makes it clear that "[t]he adjudicator must remember that the limitations defined in the 'paragraph B' . . . criteria are not [a residual functional capacity] assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4; see Dawkins v. Colvin, 2016 WL 740301, at *2 (WD Mo. Feb. 24, 2016) (discussing that moderate means different things at different points of the disability analysis). As such, the Court observes that the ALJ's discussion of evidence at steps 2 and 3 regarding the PRTs, and the finding that Plaintiff had the above discussed "moderate" limitations was <u>not</u> intended to be an RFC assessment. Yet, despite this separation, the ALJ still undertook efforts to point out that, unlike what the Agency consulting psychologists opined, Plaintiff had the more restrictive, moderate limitation in the areas of understanding, remembering, and applying information. (Tr. 22).

The ALJ was under no obligation to use the term "moderate" when discussing the Agency psychologist's opinions and the medical evidence relating to Plaintiff's RFC. As the 3rd Circuit has stated, no "incantations" are required at steps 4 and 5 simply because of findings at steps 2 and 3. Hess v. Comm. of Soc. Sec., 931 F.3d 198, 209 (3rd Cir. 2019). Instead, the ALJ is permitted to use a wide range of limitation language, regardless of what they found earlier, as long as the ALJ explains their RFC limitations. (Id.). As such, the Court finds that the term "moderate" by the ALJ here was not some artifact of a prior determination, but instead, it was language to be used in defining the limitations on Plaintiff's RFC, which the ALJ determined after reviewing Plaintiff's record as a whole. With this construction in mind, the Court must now determine whether the resulting RFC actually captured the "moderate limitation" that the ALJ found.

As discussed above, the RFC provided—in relevant part—only that Plaintiff has "the residual functional capacity to perform a full range of work at all exertional but with [the] nonexertional limitations[ of being] able to understand carry out, and remember simple instructions . . . ." (Tr. 21). However, the ALJ in his findings stated that he found a "moderate limitation in understanding, remembering, and applying information." (Tr. 22). The word "moderate" is a term of art used by the social security regulations to rate the degree of functional limitation. See 20 C.F.R. § 404.1520a(c)(4) ("When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following [increasing] five-point scale: None, mild, moderate, marked, and extreme."); see also 20 C.F.R. § 416.920a(c)(3)–(4).

The Court finds that the RFC, as written, does not encompass the ALJ's finding of "moderate limitations" of understanding, remembering, and applying information. Indeed, the stated RFC limitation of being able to carry out and remember simple instructions is not commensurate with the ALJ's finding of moderate limitations. Cf. Watts v. Colvin, No. 4:15-CV-

12

1359 NCC, 2016 U.S. Dist. LEXIS 111363, 2016 WL 4429697 (E.D. Mo. Aug. 22, 2016) (the ALJ formulated an RFC that did not account for Plaintiff's moderate limitations in ability to maintain attention and concentration). Indeed, while the ALJ is not required to copy the exact wording of a limitation, the Social Security regulations provide that the RFC must account for what the claimant can do despite his or her limitations and must include an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a); Short v. Berryhill, No. 2:15-CV-88 NAB, 2017 U.S. Dist. LEXIS 46366, 2017 WL 1164771, at *3 (E.D. Mo. Mar. 29, 2017); see also SSR 96-8p, 1996 SSR LEXIS 5, *1, 1996 WL 374184, at *1 (July 2, 1996) (the RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis). An ALJ's failure to incorporate his own findings in step four into an RFC is not a minor inconsistency, but it is instead a reversible error when, as in the case here, such findings are not functionally the same. David. P. v. Kijakazi, 2023 WL 7923788, at *2 (D. Minn. Nov. 16, 2023); see also Kenneth J.V. v. Kijakazi, No. 22-CV-373 (KMM/DJF), 2023 U.S. Dist. LEXIS 37417, 2023 WL 2388696, at *1 (D. Minn. Mar. 7, 2023); Jessica M.R. v. Kijakazi, No. 22-cv-953 (JRT/ECW), 2023 U.S. Dist. LEXIS 135639, at *24 (D. Minn. Apr. 28, 2023); Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018).

Furthermore, while remand might be avoided if the ALJ had accurately explained why he chose not to incorporate all of the limitations, which he himself found, into the RFC, the Court finds no such explanation. "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted). "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." Byes v. Astrue, 687 F.3d 913, 916 (8th Cir. 2012). "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial."

Twyford v. Comm'r, SSA, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (citing Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)).

  Specifically, the Court finds no discussion in the ALJ's opinion as to why the ALJ went from finding that Plaintiff had a "moderate limitation" of understanding, remembering, and applying information but then fashioning an RFC which provided that Plaintiff was actually able to carry out and remember simple instructions. As a result, it is impossible for the Court to harmonize these two findings without any explanation by the ALJ as to how, despite his finding of "moderate limitation," he then eventually arrived at the less restrictive RFC. See Galloway v. Kijakazi, 46 F.4th 686, 690 (8th Cir. 2022) ("Our differential standard of review precludes us from labeling findings as inconsistent if they can be harmonized.") (quotation omitted).[4] Without this information, the Court cannot conduct a meaningful review of the ALJ's decision. See Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) (quoting Reeder v. Apfel, 214 F.3d 984, 988 (8th Cir. 2000) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding, where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis to remand.").

  As a result, the Court determines that the ALJ made a reversible error when he failed to incorporate, without explanation, his own "moderate limitation" work capacity determinations into the resulting RFC. This represents a failure of the ALJ to sufficiently develop the record to permit

---

[4] Indeed, the current situation is distinguishable from many of the cases which Defendant offers the Court because, here it was the ALJ who explicitly made the moderate limitation finding, based on substantial evidence from Plaintiff's medical record, that Plaintiff had a moderate limitation of understanding, remembering, and applying information. Defendant provides the Court with several cases where the Court held that an ALJ was not required to 'parrot' a doctor's opinion as to limitations in the resulting ALJ provided such restrictions were functionally the same or the ALJ provided explanations for any differences. See e.g., David P. v. Kijakazi, 2023 WL 7923788, at *2 (D. Minn. Nov. 16, 2023). The Court agrees that when finding a medical opinion persuasive, an ALJ is not required to use its precise language in the resulting RFC and that the Court has rejected 'magic words' approaches for incorporating every evaluator's limits in the work capacity. See e.g., Wyatt v. Kijakazi, 2023 WL 6629761, at *1 (8th Cir., Oct. 6, 2023); Garry L.L. v. Kijakazi, 2023 WL 7535002, at *7 (D. Minn. Oct. 11, 2023), report and recommendation adopted, 2023 WL 7530796 (Nov. 13, 2024). However, the present case is different because here, the ALJ failed to incorporate his own "moderate limitation" determination into the language of the resulting RFC.

meaningful review on appeal. See, e.g., Dianna L.B. v. Saul, 19-cv-2561 (TNL), 2020 WL 4586822, at *5 (D. Minn. Aug. 10, 2020); Holdeman v. Kijakazi, No. 20-cv-729 (NKL), 2021 WL 6062368, at *6 (W.D. Mo. Dec. 22, 2021); Noerper v. Saul, 964 F.3d 738, 747 (8th Cir. 2020).

However, it remains for the undersigned to determine whether to recommend remanding the present case to the Social Security Administration for further consideration or to recommend the immediate entry of an award of benefits. Plaintiff asks the Court to remand this case for further administrative proceedings.

The Court finds that remand is the appropriate approach in the present case.

After determining that the Commissioner's decision is not supported by substantial evidence, a reviewing court can reverse and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994); David S. v. Saul, No. 19-cv-3137 (ADM/LIB), 2021 WL 467348, at *9 n.9 (D. Minn. Jan. 25, 2021), report and recommendation adopted, 2021 WL 465281 (D. Minn. Feb. 9, 2021); Bryan A. v. Berryhill, No. 17-cv-5494 (LIB), 2019 WL 13218558, at *10–11 (D. Minn. Mar. 28, 2019). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Faucher, 17 F.3d at 176. Where there is conflicting evidence in the record, the Court should remand the case back to the Commissioner for further consideration. See Faucher, 17 F.3d at 176.

While it is possible that Plaintiff might be entitled to benefits, on the present record, this Court cannot say that such a determination can be made at this time as a matter of undisputed fact. Consequently, the Court declines to recommend reversal for an immediate award of benefits. Instead, the Court recommends the present case be remanded to the Commissioner so that a

determination may be made in a manner consistent with this recommendation and on the medical evidence in the record.

## V. CONCLUSION

Although it is a plaintiff's burden to establish her RFC, "the disability determination process is not an adversarial process," and the Commissioner has a concurrent, independent "duty to develop the record." Noerper v. Saul, 964 F.3d 738, 747 (8th Cir. 2020). This duty includes the ALJ's duty to develop the record by sufficiently explaining their decisions and choices in a manner which permits meaningful appellate review. Id.; Combs, 878 F.3d at 646. In the present case, the Commissioner (through the ALJ) has failed to satisfy this duty, for all the reasons discussed above.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's request for relief, [Docket No. 14], be **GRANTED**;

2. Defendant's request for relief, [Docket No. 16], be **DENIED**; and

3. The above captioned matter be **REMANDED** to the Social Security Administration, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with the Report and Recommendation.

Dated:  January 14, 2025                                  s/Leo I. Brisbois
                                                          Hon. Leo I. Brisbois
                                                          United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).